**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> DORMAKABA HOLDING AG., and DORMAKABA DEUTSCHLAND GMBH, DORMAKABA HOLDING GMBH + CO. KGAA <br><br> Defendants. | Civil Action No. 2:26-cv-00455 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Liberty Access Technologies Licensing LLC ("Liberty Access" or "Plaintiff") files this Complaint for patent infringement against Defendants Dormakaba Holding AG, ("Dormakaba Holding"), Dormakaba Deutschland GmbH ("Dormakada GmbH"), Dormakaba Holding GmbH + Co.  KGaA ("Dormakaba KGaA") (collectively, the "Dormakaba Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S.  Patent No. | Title |
|---|---|---|
| A. | 9,373,205 | Access Control System And Method For Use By An Access Device |
| B. | 10,657,747 | Access Control System And Method For Use By An Access Device |

|  | U.S.  Patent No. | Title |
|---|---|---|
| C. | 11,443,579 | Access Control System And Method For Use By An Access Device |
| D. | 11,217,053 | Access Control System and Method for Use by an Access Device |
| E. | 11,373,474 | Access Control System And Method For Use By An Access Device |

2.    Liberty Access seeks injunctive relief and monetary damages.

## **PARTIES**

3.    Liberty Access is a limited liability company organized under the laws of the State of Texas, with a registered office address located in Austin, Texas.

4.    Defendant Dormakaba Holding is a corporation organized under the laws of Switzerland, with a principal place of business located at Hofwisenstrasse 24, 8153 Rümlang, Switzerland.

5.    Defendant Dormakaba Deutschland GmbH is a corporation organized under the laws of Germany, with a principal place of business located at Dorma Platz 1, 58256 Ennepetal, Germany.

6.    Defendant Dormakaba Holding GmbH + Co.  KGaA is a corporation organized under the laws of Germany, with a principal place of business located at Dorma Platz 1, 58256 Ennepetal, Germany

7.    The Dormakaba Defendants themselves directly sell, offer for sale, manufacture, use, and import products in and into the United States, Texas, and this District under the brand name "Dormakaba."[1].

8.    The Dormakaba Defendants are also liable for the infringing acts of their subsidiaries

---

[1]*See* https://www.dormakaba.com/us-en/offering (last visited on June 8, 2026).

under 35 U.S.C. § 271(a) as an alter ego because the Dormakaba Defendants and their United States subsidiaries and affiliates have such unity of interest, ownership, and/or control that the separate personalities of the corporations and their subsidiaries no longer exist and that an inequitable result will follow if the acts giving rise to infringement are treated as those of the subsidiaries alone.  Dormakaba Holding AG owns 52.5% of Dormakaba KGaA, which is "an intermediate holding company that comprises all the operating entities of the Group," including Dormakaba USA Inc.  All strategic and operational decisions for the US business flow through the Swiss-based Executive Committee, and following the "Shape4Growth" restructuring effective July 1, 2023, the US market reports directly to the Chief Commercial Officer employed by the Swiss parent entity, with no independent US-based representation on the group's top decision-making body.[2]

9.     The Dormakaba Defendants also induce their subsidiaries, sister companies, affiliates, partners, authorized dealers, and/or customers to make, use, sell, offer to sell, and/or import Accused Products in the United States, including in the state of Texas and this District, thereby committing infringing acts under 35 U.S.C. § 271(b).  On information and belief, the Dormakaba Defendants develop and own the patented technology embodied in Dormakaba products sold in the United States, including through centralized global product development directed by the Chief Innovation Officer employed by the Swiss parent, and direct the deployment of such technology into the US market through their subsidiaries

10.    As principals directing their agents (e.g., subsidiaries, affiliates, and/or sister companies), the Dormakaba Defendants should be held liable for the infringing acts of their

---

[2] *See* https://report.dormakaba.com/2021_22/en/legal-structure/#:~:text=All%20of%20the%20following%20companies,dormakaba%20USA%20Inc (last visited on June 8, 2026).

subsidiaries under 35 U.S.C. § 271(c).

11.    As principals directing their agents (e.g., subsidiaries, affiliates, and/or sister companies), the Dormakaba Defendants should be held liable for the infringing acts of their subsidiaries under 35 U.S.C. § 271(c).

12.    The Dormakaba Defendants and their subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

13.    The United States subsidiaries and affiliates of the Dormakaba Defendants operate as alter egos and agents of the Dormakaba defendants to perform the activities and sales alleged herein.

## JURISDICTION AND VENUE

14.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

15.    This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

16.    Venue is proper in this District as to Defendants.  Dormakaba Holding AG is organized under the laws of Switzerland, Dormakaba Deutschland GmbH is organized under the laws of Germany, and Dormakaba KGaA is organized under the laws of Germany.  28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

17.    Dormakaba Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Dormakaba Defendants' substantial business in this judicial district, including: (i) at least a portion of the

infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

18.     Specifically, Dormakaba Defendants intend to do and do business in, have committed acts of infringement in this District, in this State of Texas, and in the United States, directly and through intermediaries, and offer their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

19.     Dormakaba Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Dormakaba Defendants regularly sell (either directly or indirectly), their products within this District.  For example, Dormakaba Defendants have placed and continue to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Dormakaba Defendants are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and District, including their infringing activities alleged herein, from which Dormakaba Defendants derive substantial revenue from goods sold to Texas residents and consumers.

20.     Dormakaba Defendants ship and cause to be shipped into the District infringing products and materials instructing their customers to perform infringing activities, to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

21.    Dormakaba Defendants market, sell, and deliver Accused Products in this District, and have committed acts of infringement in this District.  Dormakaba Defendants also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners.  For example, Dormakaba products are sold and distributed by resellers in and serving the Eastern District of Texas.  Those sales occur in the United States, and throughout Texas, including in this District.

22.    Dormakaba Defendants commit acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

23.    Dormakaba Defendants have established direct, physical contacts with the State of Texas.  Dormakaba Defendants maintain sales consultants within the State of Texas who market, demonstrate, and sell Dormakaba products, including the Accused Products, to customers in this District.[3]  Dormakaba Defendants also maintain local service branch offices in the State of Texas that provide installation, service, and technical support for Dormakaba products, including the Accused Products.[4]

24.    Among the distribution and retail relationships through which Dormakaba products reach customers in this District are authorized resellers and dealers, including Lock Masters, 1501 Summit Ave, Suite 3 Plano, TX 75074, which sells Dormakaba products to customers in and serving the Eastern District of Texas.[5]

25.    Dormakaba Defendants have committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over Dormakaba Defendants would

---

[3] *See* https://www.dormakaba.com/us-en/contact-sales (last visited on June 8, 2026).
[4] *See* https://www.dormakaba.com/us-en/service-branch (last visited on June 8, 2026).
[5] *See* https://lockmasters.com/search/dormakaba (last visited on June 8, 2026).

not offend traditional notions of fair play and substantial justice.

26.    Dormakaba Defendants commit acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

27.    In addition, or in the alternative, this Court has personal jurisdiction over Dormakaba Defendants pursuant to Fed.  R.  Civ.  P.  4(k)(2).

## THE ACCUSED PRODUCTS

28.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

29.    Based upon public information, Dormakaba Defendants own, operate, advertise, and/or control the website https://www.dormakaba.com/us-en (last visited on June 8, 2026), through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

30.    Dormakaba    Defendants    also    maintain    a    "Contact    Sales"    portal    at https://www.dormakaba.com/us-en/contact-sales (last visited on June 8, 2026) through which they deploy sales consultants throughout the United States, including in the State of Texas.  Dormakaba Defendants further maintain local service branch offices through https://www.dormakaba.com/us-en/service-branch (last visited on June 8, 2026), including branch locations in or serving the State of Texas.

31.    Based upon public information, Dormakaba Defendants make, use, cause to be used, sell, offer for sale, import, provide, supply, and/or distribute, and instruct their subsidiaries, affiliates, and end users to use the hardware, software, and functionality that implement their Mobile Access features as a key, through marketed products and services, including, but not

limited to: the BlueSky Access Application, or other mobile platforms including Dormakaba Mobile Access, RCI Conekt Mobile Credentials, and Keyscan Mobile Credentials.   These applications enable users to unlock compatible Dormakaba smart door readers installed at access points.   Dormakaba provides a range of such smart door reader models that support mobile credentials transmitted via Bluetooth and/or NFC, including, for example, the Saffire LX, as well as Quantum Pixel+, Quantum RFID, MT RFID, RT Plus, Confidant, and Quantum IV. (collectively, the "Accused Products").   *See* **Figures 1–10** (below); *see also* **Exhibits A–E** (Evidence of Use Regarding Infringement of the Asserted Patents).



**Figure 1**
Source: BLUESKY – APP OVERVIEW,
https://kb.dormakaba.com/hc/article_attachments/34485183354779
(last visited on June 8, 2026).



With dormakaba mobile access you receive access permissions to your smartphone, which were provided by dormakaba access systems. For effective access, interfaces such as Bluetooth Low Energy (BLE) are used.

Application and advantages:
- You receive your access permissions regardless of whether you are on the road or are in front of the door
- Access by means of BLE
- One independent app for several systems

**Figure 2**
Source: DORMAKABA MOBILE ACCESS,
https://apps.apple.com/us/app/dormakaba-mobile-access/id1247902052
(last visited on June 8, 2026).



**Figure 3**
Source: RCI CONEKT MOBILE CREDENTIALS
https://www.dormakaba.com/us-en/offering/products/electronic-access-data/mobile-credentials/rci-conekt-mobile-credentials--dk_30101?_gl=1*wwmex9*_up*MQ..*_ga*MzY4NzIxOTQ4LjE3NzY5MjMyNDE.*_ga_KBJNCFRZH9*czE3NzY5MjMyNDEkbzEkZzAkdDE3NzY5MjMyNDEkajYwJGwwJGgw*_ga_6HKP07FGW7*czE3NzY5MjMyNDEkbzEkZzEkdDE3NzY5MjM2NzAkajI0JGwwJGgw
(last visited on June 8, 2026).



**Figure 4**
Source: KEYSCAN MOBILE CREDENTIALS
https://www.dormakaba.com/us-en/offering/products/electronic-access-data/mobile-credentials/keyscan-mobile-credentials--ka_500239?_gl=1*wwmex9*_up*MQ..*_ga*MzY4NzIxOTQ4LjE3NzY5MjMyNDE.*_ga_KBJNCFRZH9*czE3NzY5MjMyNDEkbzEkZzAkdDE3NzY5MjMyNDEkajYwJGwwJGgw*_ga_6HKP07FGW7*czE3NzY5MjMyNDEkbzEkZzEkdDE3NzY5MjM2NzAkajI0JGwwJGgw
(last visited on June 8, 2026).



**Figure 5**

Source: SAFFIRE LX,
https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-locks/saffire-lx--dk_307#downloads (last visited on June 8, 2026).



**Figure 6**
Source: QUANTUM PIXEL+,
https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-locks/quantum-pixel--dk_92100 (last visited on June 8, 2026).



---

Mobile Access capable lock

**Figure 7**

Source: QUANTUM RFID,
https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-locks/quantum-rfid--ka_117755 (last visited on June 8, 2026).



## MT RFID

The MT RFID is a full-body electronic lock that offers contactless and mobile access technology to enhance guest convenience and improve operational efficiency. Ideal for retrofits, this lock works with the  dormakaba's Ambiance Access Management Software that features an array of access control workflows for both guest and staff access. Optionally, choose dormakaba's Ambiance RX online access management solution for remote access giving you anytime control, from anywhere.

**Mobile Access:**
The MT RFID supports NFC, RFID, and Bluetooth® Low Energy (BLE) technology and can operate with dormakaba Mobile Access Solutions, allowing guests to use a card key or mobile access for their digital wallet, instantly turning their phone into a key.

**Figure 8**
Source: MT RFID,
https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-locks/mt-rfid--ka_117771 (last visited on June 8, 2026).



## Confidant

The Confidant electronic hotel door lock combines timeless, sleek design and advanced technology to enhance guest experience and streamline hotel operations. It supports mobile access via Digital Wallets (NFC) and Bluetooth®  Low Energy, as well as RFID technologies, offering secure, contactless and convenient access across all hotel sizes and building types. Confidant is suitable for both new builds and retrofit projects. Integrated with dormakaba's Ambiance software, it provides a seamless experience for both guests and staff.

> **Mobile Access Solutions**
> This Bluetooth® Low Energy (BLE) capable lock can oper-
> ate using the dormakaba Mobile Access Solutions, allow-
> ing guests to use their mobile devices as their room key.

**Figure 9**
Source: CONFIDANT,
https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-
locks/confidant--ka_205853 (last visited on June 8, 2026).



**Figure 10**
Source: https://www.dormakaba.com/us-en/offering/products/lodging-systems/electronic-hotel-
locks/rt-plus--
dk_445?_gl=1*781mke*_up*MQ..*_ga*MzY4NzIxOTQ4LjE3NzY5MjMyNDE.*_ga_KBJNC
FRZH9*czE3NzY5MjMyNDEkbzEkZzEkdDE3NzY5MjM3MTkkajYwJGwwJGgw*_ga_6HK
P07FGW7*czE3NzY5MjMyNDEkbzEkZzEkdDE3NzY5MjM3MTkkajQzJGwwJGgw
(last visited on June 8, 2026).

## COUNT I: INFRINGEMENT OF U.S.  PATENT NO.  9,373,205

32.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

33.    The USPTO duly issued U.S.  Patent No.  9,373,205 (the "'205 patent") on June 21, 2016, after full and fair examination of Application No 14/603,434, which was filed on January

23, 2015.  *See* '205 patent at 1.  A Reexamination Certificate was issued on February 25, 2022 after supplemental examination of application No.  96/000,367.  *See id.* at 14–17.

34.     Liberty Access is the exclusive licensee of the '205 patent with all substantial rights, and interest in and to the '205 patent, including the sole and exclusive right to prosecute this action and enforce the '205 patent against infringers, and to collect damages for all relevant times.

35.     Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '205 patent.

36.     The claims of the '205 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for secure access to control of a door lock based on information contained in a current reservation certificate.

37.     The written description of the '205 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '205 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

38.     Dormakaba Defendants have infringed one or more claims of the '205 patent by using, providing, supplying, or distributing the Accused Products.

39.     Dormakaba Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '205 patent.

40.    For example, the Accused Products provide an access device for use in an access control system, the access device comprising: a processor having control of a door lock; and a communication module connected to the processor, the processor is configured to receive a reservation certificate presented by a portable terminal through the communication module; wherein, when a current reservation certificate that comprises an interval of a reservation is presented by the portable terminal, the processor is configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor, determine the current time is within the interval of the reservation, and activate the door lock to allow the portable terminal to unlock the door lock during the interval of the reservation.

41.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '205 patent by inducing others to directly infringe one or more claims of the '205 patent. Dormakaba Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including Dormakaba Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '205 patent by using the Accused Products. Dormakaba Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent. Such steps by Dormakaba Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Dormakaba Defendants are performing these steps, which

constitutes induced infringement with the knowledge of the '205 patent and with the knowledge that the induced acts constitute infringement. Dormakaba Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '205 patent. Dormakaba Defendants' inducement is ongoing.

42. Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '205 patent. Dormakaba Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '205 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '205 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '205 patent and are not staple articles of commerce suitable for substantial non-infringing use. Dormakaba Defendants' contributory infringement is ongoing.

43. On information and belief, Dormakaba Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others) and thus have been willfully blind of Plaintiff's patent rights.

44. Dormakaba Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dormakaba Defendants.

45.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants' direct and indirect infringement of one or more claims of the '205 patent has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

46.    Plaintiff has been damaged as a result of the infringing conduct by Dormakaba Defendants alleged above.  Thus, Dormakaba Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Dormakaba Defendants' infringement of one or more claims of the '205 patent.  Dormakaba Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT II: INFRINGEMENT OF U.S.  PATENT NO.  10,657,747

48.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

49.    The USPTO duly issued U.S.  Patent No.  10,657,747 (the "'747 patent") on May 19, 2020, after full and fair examination of Application No.  16/034,278, which was filed on July 12, 2018.  *See* '747 patent at 1.

50.    Liberty Access is the exclusive licensee of the '747 patent with all substantial rights, and interest in and to the '747 patent, including the sole and exclusive right to prosecute this action and enforce the '747 patent against infringers, and to collect damages for all relevant times.

51.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '747 patent.

52.    The claims of the '747 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

53.    The written description of the '747 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '747 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

54.    Dormakaba Defendants have infringed and continue to infringe one or more claims of the '747 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

55.    Dormakaba Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '747 patent.

56.    For example, the Accused Products provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock; a secure reservation interface to receive a reservation request from a first device for a

reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of a location at the destination and an interval of the reservation; a reservation server, in communication with the reservation interface and a network, to receive the reservation request for the destination that includes a selected location at the destination and an interval of the reservation; issue a reservation certificate describing the interval of the reservation based on the reservation request and the selected location; and transmit, via the network, from the reservation server to a second device distinct from the first device, the reservation certificate and a communication setting corresponding to the access device; an application installed on the second device to receive the reservation certificate and the communication setting corresponding to the access device, wherein the application wirelessly transmits the reservation certificate to the access device using the communication setting upon receipt of a command to activate the door lock; and wherein the access device receives the reservation certificate from the application based on use by the application of the communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

57.     Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '747 patent by inducing others to directly infringe one or more claims of the '747 patent. Dormakaba Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including Dormakaba Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '747 patent by using the Accused Products.  Dormakaba Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '747 patent,

including, for example, claim 1 of the '747 patent.  Such steps by Dormakaba Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dormakaba Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '747 patent and with the knowledge that the induced acts constitute infringement.  Dormakaba Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '747 patent.  Dormakaba Defendants' inducement is ongoing.

58.    Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '747 patent.  Dormakaba Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '747 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '747 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '747 patent, including, for example, claim 1 of the '747 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps.  The special features constitute a material part of the invention of one or more of the claims of the '747 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dormakaba Defendants' contributory infringement is ongoing.

59.    Dormakaba Defendants have had knowledge of the '747 patent at least as of the date when they were notified of the filing of this action.

60.     Furthermore, on information and belief, Dormakaba Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

61.     Dormakaba Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dormakaba Defendants.

62.     Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants' direct and indirect infringement of one or more claims of the '747 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

63.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Dormakaba Defendants alleged above.  Thus, Dormakaba Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.     Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Dormakaba Defendants' infringement of one or more claims of the '747 patent.  Dormakaba Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S.  PATENT NO.  11,443,579

65.     Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

66.     The USPTO duly issued U.S.  Patent No.  11,443,579 (the "'579 patent") on September 13, 2022, after full and fair examination of Application No.  17/657,752, which was filed on April 2, 2022.  *See* '579 patent at 1.

67.     Liberty Access is the exclusive licensee of the '579 patent with all substantial rights, and interest in and to the '579 patent, including the sole and exclusive right to prosecute this action and enforce the '579 patent against infringers, and to collect damages for all relevant times.

68.     Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '579 patent.

69.     The claims of the '579 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

70.     The written description of the '579 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.   The '579 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

71.    Dormakaba Defendants have infringed and continue to infringe one or more claims of the '579 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

72.    Dormakaba Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 8 of the '579 patent.

73.    For example, the Accused Products provide an access control system comprising an access control system comprising: an access device comprising a communication module connected to a processor having control of a lock; an application on a portable terminal; and a server to provide a communication setting and a reservation certificate to the application, the communication setting corresponding to the access device, and the reservation certificate comprising an interval of a reservation, wherein the processor receives the reservation certificate from the application based on use by the application of the communications setting, and wherein the processor compares the interval of the reservation to a current time accessible to the processor to determine if the reservation certificate is current and wherein the processor activates the lock when the processor determines that the reservation certificate is current.

74.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '579 patent by inducing others to directly infringe one or more claims of the '579 patent. Dormakaba Defendants have induced and continue to induce their subsidiaries, parents, partners, employees, affiliates, and end-users, including Dormakaba Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '579 patent by using the Accused Products.  Dormakaba Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause

them to use the Accused Products in a manner that infringes one or more claims of the '579 patent, including, for example, claim 8 of the '579 patent.  Such steps by Dormakaba Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dormakaba Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '579 patent and with the knowledge that the induced acts constitute infringement.  Dormakaba Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '579 patent.  Dormakaba Defendants' inducement is ongoing.

75.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '579 patent.  Dormakaba Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '579 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '579 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '579 patent, including, for example, claim 8.  The special features include, for example, the system recited in claim 8.  The special features constitute a material part of the invention of one or more of the claims of the '579 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dormakaba Defendants' contributory infringement is ongoing.

76.     Dormakaba Defendants have had knowledge of the '579 patent at least as of the date when they were notified of the filing of this action.

77.     Furthermore, on information and belief, Dormakaba Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

78.     Dormakaba Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dormakaba Defendants.

79.     Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants' direct and indirect infringement of one or more claims of the '579 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

80.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Dormakaba Defendants alleged above.  Thus, Dormakaba Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81.     Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Dormakaba Defendants' infringement of one or more claims of the '579 patent.  Dormakaba Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,217,053

82.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

83.    The USPTO duly issued U.S. Patent No. 11,217,053 (the "'053 patent") on January 4, 2022, after full and fair examination of Application No. 16/847,719, which was filed on April 14, 2020. *See* '053 patent at 1.

84.    Liberty Access is the exclusive licensee of the '053 patent with all substantial rights, and interest in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers, and to collect damages for all relevant times.

85.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

86.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

87.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '053 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

88.     Dormakaba Defendants have infringed and continue to infringe one or more claims of the '053 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

89.     Dormakaba Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent.

90.     For example,  the Accused Products provide an access control system comprising: a) an access device comprising a short-range wireless communication module connected to a processor having control of a door lock; b) a secure reservation interface to receive a reservation request for a reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of at least an interval of the reservation; c) a reservation server, in communication with the reservation interface and a network, to: receive the reservation request for the destination, the reservation request including at least the interval of the reservation; issue a reservation certificate comprising the interval of the reservation based on at least the reservation request; transmit, via the network, from the reservation server to a smartphone, at least the reservation certificate and a short-range wireless communication setting corresponding to the access device; d) a smartphone application installed on the smartphone to receive the reservation certificate and the communication setting corresponding to the access device, wherein the smartphone application comprises a transmission module that wirelessly transmits the reservation certificate to the access device using the short-range wireless communication setting when the smartphone on which the smartphone application is installed is within short-range wireless transmission distance of the access device; and e) wherein the access device receives the reservation certificate from the smartphone application based on use by the smartphone application

of the short-range wireless communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

91.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '053 patent by inducing others to directly infringe one or more claims of the '053 patent. Dormakaba Defendants have induced and continue to induce their subsidiaries, parents, partners, employees, affiliates, and end-users, including Dormakaba Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '053 patent by using the Accused Products. Dormakaba Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '053 patent, including, for example, claim 1 of the '053 patent. Such steps by Dormakaba Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Dormakaba Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '053 patent and with the knowledge that the induced acts constitute infringement. Dormakaba Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '053 patent. Dormakaba Defendants' inducement is ongoing.

92.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '053 patent. Dormakaba Defendants have contributed

and continue to contribute to the direct infringement of one or more claims of the '053 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '053 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '053 patent, including, for example, claim 1.  The special features include, for example, the method recited in claim 1, including all the intermediary steps.  The special features constitute a material part of the invention of one or more of the claims of the '053 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dormakaba Defendants' contributory infringement is ongoing.

93.    Dormakaba Defendants have had knowledge of the '053 patent at least as of the date when they were notified of the filing of this action.

94.    Furthermore, on information and belief, Dormakaba Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

95.    Dormakaba Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dormakaba Defendants.

96.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants' direct and indirect infringement of one or more claims of the '053 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

97.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Dormakaba Defendants alleged above.  Thus, Dormakaba Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

98.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Dormakaba Defendants' infringement of one or more claims of the '053 patent.  Dormakaba Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S.  PATENT NO.  11,373,474

99.    Liberty Access repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

100.    The USPTO duly issued U.S.  Patent No.  11,373,474 (the "'474 patent") on June 28, 2022, after full and fair examination of Application No.  17/646,837, which was filed on January 3, 2022.  *See* '474 patent at 1.  A Reexamination Certificate was issued on May 13, 2024 after supplemental examination of application No.  90/015,231.  *See id.* at 16–19.

101.    Liberty Access is the exclusive licensee of the '474 patent with all substantial rights, and interest in and to the '474 patent, including the sole and exclusive right to prosecute this action and enforce the '474 patent against infringers, and to collect damages for all relevant times.

102.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '474 patent.

103.    The claims of the '474 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

104.    The written description of the '474 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.   The '474 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

105.    Dormakaba Defendants have infringed and continue to infringe one or more claims of the '474 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

106.    Dormakaba Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '474 patent.

107.    For example, the Accused Products provide an access control system comprising: An access control system comprising: an access device comprising a unique Bluetooth ID and a communication module connected to a processor having control of a door lock; an application on a portable terminal; and a server to provide a communication setting to the application, the communication setting corresponding to the access device, and to further provide a reservation certificate to the application, the reservation certificate comprising an interval of a reservation,

wherein the reservation certificate provided to the application includes the unique Bluetooth ID of the access device, and wherein the application uses the unique Bluetooth ID of the access device to identify when the access device is in proximity to the portable terminal and to communicate with the access device when it is identified as in proximity to the application, wherein the application compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current and wherein, the application provides the reservation certificate to the access device and activates the door lock by communicating with the access device via the communication setting when the application determines that the reservation certificate is current; and wherein the reservation certificate is provided to the access device solely by the application.

108.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '474 patent by inducing others to directly infringe one or more claims of the '474 patent. Dormakaba Defendants have induced and continue to induce their subsidiaries, parents, partners, employees, affiliates, and end-users, including Dormakaba Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '474 patent by using the Accused Products.  Dormakaba Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '474 patent, including, for example, claim 1 of the '474 patent.  Such steps by Dormakaba Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused

Products in an infringing manner.  Dormakaba Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '474 patent and with the knowledge that the induced acts constitute infringement.  Dormakaba Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '474 patent.  Dormakaba Defendants' inducement is ongoing.

109.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '474 patent.  Dormakaba Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '474 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '474 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '474 patent, including, for example, claim 1.  The special features include, for example, the system recited in claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '474 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dormakaba Defendants' contributory infringement is ongoing.

110.    Dormakaba Defendants have had knowledge of the '474 patent at least as of the date when they were notified of the filing of this action.

111.    Furthermore, on information and belief, Dormakaba Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

112.    Dormakaba Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dormakaba Defendants.

113.    Since at least the time of receiving the original Complaint in this matter, Dormakaba Defendants' direct and indirect infringement of one or more claims of the '474 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

114.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Dormakaba Defendants alleged above.  Thus, Dormakaba Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

115.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Dormakaba Defendants' infringement of one or more claims of the '474 patent.  Dormakaba Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

116.    Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

117.    WHEREFORE, Liberty Access requests that the Court find in its favor and against Dormakaba Defendants, and that the Court grant Liberty Access the following relief:

a. Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Dormakaba Defendants or all others acting in concert therewith;

b. A permanent injunction enjoining Dormakaba Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c. Judgment that Dormakaba Defendants account for and pay to Liberty Access all damages to and costs incurred by Liberty Access because of Dormakaba Defendants' infringing activities and other conduct complained of herein;

d. Judgment that Dormakaba Defendants' infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Dormakaba Defendants' infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award Liberty Access its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 8, 2026</u>         Respectfully submitted,

By:<u>/s/ C.  Matthew Rozier</u>

C.  Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, CO  80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L.  Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W.  14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F.  McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Ave., Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

**Attorneys for Plaintiff *LIBERTY ACCESS TECHNOLOGIES LICENSING LLC***
*Admitted to the Eastern District of Texas